FILED

OCT 28 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-13-1010-JuKiPa |
| RONALD CALDERON and JANESSA LEE PRICE, | Bk. No. EC-12-25992-MSM |
| Debtors. | |
| FRANCIS DAVIN, | |
| Appellant, | |
| v. | M E M O R A N D U M* |
| JAN P. JOHNSON, Chapter 13 Trustee; RONALD CALDERON; JANESSA LEE PRICE, | |
| Appellees. | |

Argued and Submitted on October 18, 2013
at Sacramento, California

Filed - October 28, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Michael S. McManus, Bankruptcy Judge, Presiding

_____

Appearances:    Timothy A. Charshaf, Esq. argued for appellant
                Francis Davin; Ulric N. Duverney, Esq. argued for
                appellees Ronald Calderon and Janessa Lee Price.

_____

Before:  JURY, KIRSCHER, and PAPPAS, Bankruptcy Judges.

_____

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellant-creditor Francis Davin appeals from the bankruptcy court's order denying his motion for leave to file a late proof of claim (POC) and a complaint for § 523 nondischargeability or, alternatively, to deny chapter 13[1] debtor, Janessa Lee Price, her discharge under § 727. We AFFIRM.

## I. FACTS

On April 30, 2007, Price and Davin entered into a written agreement for Davin to purchase Interpretative Consulting Services (ICS), a California corporation wholly owned by Price. The parties agreed on a purchase price of $1.5 million (reduced to $1 million if paid in full within one year of the April 30, 2007 contract date), including a $150,000 non-refundable deposit paid by Davin to Price. Thereafter, Davin assumed the management and day-to-day operation of ICS. Later, a dispute arose between the parties.

On May 17, 2010, Davin filed a complaint against Price in the state court alleging causes of action for breach of contract, fraud, negligent misrepresentation and breach of oral contract.

On July 13, 2010, Price filed her answer and cross-complaint against Davin, alleging causes of action for breach of written contract, fraud, negligent misrepresentation, and breach of oral contract.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

-2-

**A.    Debtors' First Bankruptcy**

On June 30, 2011, debtors filed a chapter 13 petition (Bankr. Case No. 11-36278).  Debtors listed Davin as a creditor and sent a notice of stay of proceedings and notice of the meeting of creditors and other deadlines to Davin at his home address on Molina Street, Napa, California.  Davin turned over these documents to his attorney, Timothy Charshaf (Charshaf), who was representing Davin in the state court action against Price.

On July 8, 2011, Price's state court attorney, Norbert Frost (Frost), served Charshaf by mail with a Notice of Stay of Proceedings which was mailed to 4359 Town Center Blvd., Ste. 210, El Dorado Hills, CA 95762 (Town Center Blvd. Address).

On August 31, 2011, the bankruptcy court dismissed debtors' case.

On September 7, 2011, Charshaf filed a Request for Special Notice in the bankruptcy case.

On September 9, 2011, Charshaf notified the state court of the dismissal of debtors' case.

**B.    Debtors' Second Bankruptcy**

On March 27, 2012, debtors filed the instant case, also a chapter 13.  They again listed Davin as a creditor.  Debtors and their bankruptcy attorney, John Tosney (Tosney) signed the Verification of Master Address List which listed Davin's address as "c/o The Heritage Law Group, APC, 1101 Investment Blvd., Ste. 160, El Dorado Hills, CA 95762" (Investment Blvd. Address).  The Investment Blvd. Address was Charshaf's old address.

In a letter dated March 29, 2012, Tosney notified Frost

-3-

regarding debtors' bankruptcy filing and imposition of the stay. The letter requested Frost to notify the state court of the automatic stay. Attached to the letter was the face sheet of debtors' petition.

On April 2, 2012, Frost served Charshaf with a Notice of Stay of Proceedings, the March 29, 2012 letter, and the face sheet of debtors' petition at the Town Center Blvd. Address.

On April 4, 2012, the bankruptcy court filed and mailed the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines (Notice) to the addresses on the master address list. The Notice set the first meeting of creditors for May 10, 2012, the last day for filing nondischargeability complaints for July 9, 2012, and the last day to file a POC for August 8, 2012. Charshaf did not receive the Notice or debtors' chapter 13 plan because debtors used the Investment Blvd. Address. Charshaf's Notice was returned to the bankruptcy court as undeliverable and the clerk notified Tosney that it was returned.

On July 9, 2012, the time for filing a nondischargeability complaint in debtors' case expired.

On July 25, 2012, Charshaf filed a Request for Special Notice with the bankruptcy court listing his address as 5176 Hillsdale Circle, Ste. 100, El Dorado Hills, CA 95762.

On August 8, 2012, the time for filing a POC in debtors' case expired.

On October 31, 2012, Frost filed a status report in the state court action stating that Davin had not filed a POC in debtors' chapter 13 case and that debtors' plan had been approved by the bankruptcy court on June 12, 2012. Frost

-4-

served Charshaf at the Town Center Blvd. Address.

On November 2, 2012, Charshaf filed a motion in the bankruptcy court for leave to file a late POC on behalf of Davin and a complaint for § 523 nondischargeability or, in the alternative, to deny Price her discharge under § 727. Charshaf filed a declaration in support, stating, among other things, that he was the attorney for Davin and that Frost served him with the Notice of Stay of Proceedings on April 2, 2012.

Price opposed the motion, contending that Davin had actual and constructive notice of her bankruptcy case because Frost had served Charshaf with a Notice of Stay of Proceedings. Price filed a declaration in support stating that she was never aware of Charshaf's new addresses and that the address she used was on the original state court pleading. She also declared that The Heritage Law Group's website still listed Charshaf as one of their attorneys and listed a Sacramento area address as 2901 Douglas Blvd., Ste. 290, Roseville, CA 95661.

On December 17, 2012, the bankruptcy court denied Davin's motion.[2] On December 20, 2012, the bankruptcy court entered the order. On January 3, 2013, Davin filed a timely notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (I). We have

---

[2] There is no transcript of the hearing in the record. Appellant's failure to include a transcript of this hearing, while not fatal to their case since our review is de novo, is a violation of Rule 8009(b) and 9th Cir. BAP R. 8006-1.

-5-

jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Did the bankruptcy court err, as a matter of law, when it concluded that Davin's complaint for § 523 nondischargeability and POC were time barred?

## IV.  STANDARD OF REVIEW

Whether the bankruptcy court was correct in its interpretation of § 523(a)(3)(B), its interpretation of Rule 4007(c), and its disallowance of an untimely filed POC under Rule 3002(c) is reviewed de novo.  Towers v. United States (In re Pac.-Atl. Trading Co.), 64 F.3d 1292, 1297 (9th Cir. 1995) (interpretation of statute); Herndon v. De La Cruz (In re De La Cruz), 176 B.R. 19, 22 (9th Cir. BAP 1994) (interpretation of Rule 4007(c)); IRS v. Osborne (In re Osborne), 76 F.3d 306, 310 (9th Cir. 1996)(untimely POC).

## V.  DISCUSSION

The record shows that it is undisputed that Charshaf represented Davin with respect to the same debt in the state court and debtors' bankruptcy proceedings.  It is also undisputed that the bankruptcy court sent the Notice of the bar dates to Charshaf at an outdated address and thus he never received it.  Finally, it is undisputed that Charshaf received the Notice of Stay of Proceedings from Frost approximately six days after debtors' bankruptcy filing.  This notice, which attached the face sheet of debtors' petition, gave the name of the bankruptcy case, the bankruptcy court, and the bankruptcy case number.

**A. Notice: Complaints for § 523 Nondischargeability**

Debtors listed Davin as a creditor on their schedules. Rule 4007(c) requires a creditor to file a complaint for nondischargeability under § 523(a)(2), (4), and (6) no later than 60 days after the first date set for the meeting of creditors under § 341(a). A listed creditor who has adequate notice of the meeting of creditors but fails to make a timely complaint, has certain claims automatically discharged pursuant to § 523(c)(1). However, the fact a creditor is listed has no effect on the discharge of its claim in the absence of effective due process notice.

Although there is no per se rule, generally when a debtor lists an incorrect address so as to cause the creditor not to receive notice, the creditor's debt has not been duly scheduled. See Lubeck v. Littlefield's Rest. Corp. (In re Fauchier), 71 B.R. 212, 215 (9th Cir. BAP 1987). An unlisted creditor's claim ordinarily is not discharged and that creditor may file a complaint for nondischargeability under § 523(a)(2), (4) and (6) at any time pursuant to § 523(a)(3)(B) unless the "creditor has notice or actual knowledge of the case" in time to comply with the 60-day deadline set forth in Rule 4007(c).

Section 523(a)(3) provides that "[a] discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt--"

> (3) neither listed nor scheduled under section
> 521(a)(1) of this title, with the name, if known to
> the debtor, of the creditor to whom such debt is owed,
> in time to permit--
>
> . . .

-7-

> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request. . . .

By its plain terms, § 523(a)(3)(B) specifically qualifies any right to assume receipt of formal notice. See Lompa v. Price (In re Price), 871 F.2d 97, 99 (9th Cir. 1989) (reasoning that "[t]he statutory language [of § 523(a)(3)(B)] clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates.") (internal citations omitted).

Regardless of whether we consider Davin as a listed or unlisted creditor, at bottom the inquiry is one of effective due process notice. Due process requires that the creditor receive the type of notice that was reasonably calculated under all the circumstances to apprise it of the pendency of the action and afford it an opportunity to present its claims. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950); Fireman's Fund Mort'g Corp. v. Hobdy (In re Hobdy), 130 B.R. 318, 320 (9th Cir. BAP 1991). In circumstances similar to those here, the Ninth Circuit has held that actual timely notice to the creditor's attorney of the pendency of the bankruptcy meets the due process requirement. In re Price, 871 F.2d at 99. Further, it is well established that a creditor who learns of a bankruptcy filing has a duty to inquire into the relevant deadlines. Id. Simply put, in cases of actual notice, it is up

-8-

to the creditor to see that the complaint for § 523 nondischargeability is timely filed.

Charshaf admits he had actual notice of debtors' bankruptcy within six days of its filing. Moreover, Charshaf could have identified Price as the debtor based on the notice he received which included the face sheet of debtors' petition with their names and the case number. At minimum, Charshaf should have reviewed the bankruptcy court file, which is a public record. Had he done so, he would have had ample time to file the complaint for § 523 nondischargeability. See Mfgs. Hanover v. Dewalt (In re Dewalt), 961 F.2d 848 (9th Cir. 1992) (thirty-day notice provision of Rule 4007(c) provides a guide to the minimum time within which it is reasonable to expect a creditor to act). Indeed, Charshaf does not explain why he failed to investigate after receiving actual notice of debtors' second bankruptcy filing in light of debtors' prior filing. In short, actual notice of debtors' filing is imputed to Davin for purposes of due process.

Davin also asserts his constitutional right to formal notice of the bar date on the basis of the bankruptcy court's decision in In re Rogowski, 115 B.R. 409 (Bankr. D. Conn. 1990). Rogowski is not binding on this Panel. Under Price, Davin did not act reasonably in waiting for formal notice of the bar dates after his attorney received actual notice of debtors' bankruptcy case.

In sum, the due process requirements for notice have been met in this case. Charshaf had actual notice of Price's bankruptcy, he could have identified Price as the debtor since

-9-

he had obtained the face sheet of debtors' petition, and he had plenty of time to file a § 523 nondischargeability complaint or move for an extension of time. Accordingly, the bankruptcy court properly found Davin's complaint for § 523 nondischargeability was time-barred.

**B.   Notice:  POC Bar Date in Chapter 13 Cases**

The last date to file a timely POC in this case was August 8, 2012. Davin failed to file a POC by that date. Under Rule 3002(c), a POC must be disallowed if it is untimely. Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.), 920 F.2d 1428, 1432-33 (9th Cir. 1990). Again, Davin relies on his lack of formal notice of the claims bar date as grounds for filing a late POC.

In this context, the rules regarding due process are essentially the same as those for complaints for § 523 nondischargeability. A creditor who has knowledge of the debtor's bankruptcy case in time to file a timely POC is not entitled to participate in the distribution of assets. Id. at 1430-31. Once Charshaf received actual notice of debtors' bankruptcy case, he was on inquiry notice with respect to the claims bar date. Indeed, Charshaf filed a Request for Special Notice in the case on July 25, 2012. As noted by the bankruptcy court, had Charshaf checked the docket when he filed his request, he would have discovered that there was still time to file a POC by the August 8, 2012 claims bar date.

The bankruptcy court lacks any equitable power to enlarge the time for filing a POC unless one of the six situations in Rule 3002(c) exists. Id. at 1432-33. None apply to this case.

Further, the excusable neglect standard set forth in Rule 9006(b)(3) does not apply to permit the court to extend the time for filing a POC under Rule 3002(c).  <u>Id.</u>  Because Charshaf had actual notice of debtors' bankruptcy case in time to file a POC by the claims bar date, the bankruptcy court properly found that Davin's POC was time-barred.

## VI.   CONCLUSION

For all these reasons, we AFFIRM.